UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA ex. rel AND
ASHLON WILLIAMSON, Plaintiff-Relator AND on
behalf of the State of Michigan, Detroit Wayne Mental
Health Authority, State of Texas, State of California,
State of Washington, State of Oregon, and State of New
Mexico.

      Plaintiffs,

v.

CENTRIA HEALTHCARE, LLC., and its Officers,
SCOTT BARRY, ALICIA DECKER, AMBER
GARIEPY, VANESSA PAWLAK, MICHELLE
CARTER-PIERCE, DARREN SCHWARTZ and
CHRISTOPHER WILCOX

      Defendants.

**FILED UNDER SEAL**
Case No.:
Hon.

_____/

DANIELLE B. SAFRAN (P61965)
THE SIGLER LAW FIRM, PLC
Attorney for Plaintiffs/Relator
30300 Northwestern Hwy. Suite 337
Farmington Hills, Michigan 48334
Telephone: (248) 932-3500 x237
Facsimile: (248) 932-3521
safranlaw1@gmail.com

_____/

## COMPLAINT AND JURY DEMAND

NOW COMES, ASHLON WILLIAMSON, Plaintiff-Relator by and through his

attorneys, The Sigler Law Firm, PLC, and hereby submits the following Complaint and Jury

Demand on behalf of Plaintiffs, UNITED STATES OF AMERICA, the States of Michigan, State

of Texas, State of California, State of Washington, State of Oregon, and State of New Mexico,

and Detroit Wayne Mental Health Authority (collectively "the government") against Defendants,

CENTRIA HEALTHCARE, LLC., and its officers and alleges as follows:

## I. NATURE OF THIS ACTION

1. This action alleges that, since at least 2016, Defendant Centria Healthcare, LLC, hereinafter, "Centria," and its officers, (collectively, "Defendants") knowingly submitted, and continue to submit, false and fraudulent claims to the government, which fraudulently billed services performed by "Behavior Technicians" at a higher billing rate utilized for "Behavior Analysts," credentialed, licensed and/or certified BCaBAs, QBHPs and/or BCBAs, in order to increase their billings and reimbursement from the government. (Exhibit 1, Service Provider Contract between Detroit Wayne Mental Health Authority and Centria Healthcare, LLC October 1, 2016-September 30, 2017, *See* Appendix A: Scope of Services, Staffing Requirements, pp. 14-18 and DWMHA ASD Benefit Fee Schedule Effective 10/1/16)

2. Defendants, through its agents and employees, have performed unnecessary evaluations, therapy, treatment; Defendants fraudulently billed the government for multiple evaluations and adaptive behavior treatments, both as duplicate claims and overlapping claims, and misrepresented the credentialing of its service providers in order to increase their billings to the government.

3. Defendants knowingly billed for services provided by over four hundred Behavior Technicians as if they were Behavior Analysts, in violation of the contract and False Claims Act; Defendants knew that such coding and billings were inaccurate, wrongful and not in compliance with Medicare and Medicaid requirements and/or its contract with the Detroit Wayne Mental Health Authority (hereinafter "DWMHA").

Per the Service Provider Contract between Detroit Wayne Mental Health Authority and Centria Healthcare, LLC, Behavior Analysts bill for services, treatments, and evaluations at a higher billing rate than Behavior Technicians. (Exhibit 1, *See* Appendix A: Scope of Services, Staffing Requirements, pp. 14-18 and DWMHA ASD Benefit Fee Schedule Effective 10/1/16)

4.      Since at least March 2016, Defendants have knowingly submitted false claims to Medicare, Medicaid, DWMHA, Federal Employees Health Benefits Program and other government programs (hereafter collectively "government programs") and received reimbursement to which they are not entitled.

5.      Defendants' knowing submission of false and fraudulent claims for payment constitutes a violation of the federal False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA" or "Act"); the California False Claims Act, Government Code §12650 et seq.; California Government Code §12651; Michigan Medicaid False Claim Act, § 400.601; Michigan False Claim Act, §400.607, et seq; violation of the Michigan Consumer Protection Act; New Mexico Medicaid False Claims Act, § 27-14-1 et seq.; New Mexico False Claims Act § 27-14-4A; Oregon False Claims Act, 2015 ORS §180.755, et seq; Texas Medicaid Fraud Prevention Act, §36.001 and §36.002 et seq.; Washington Medicaid Fraud False Claims Act, RCW 74.09 §101, et seq., violation of Washington Statutes RCW 74.09 §202;. and Oregon False Claims Act, 2015 ORS §180.755, et. seq.

6.      As a result of their fraudulent conduct, Defendants have caused the government to sustain a direct loss of funds and damage to its interests.

7.      The FCA was originally enacted at the request of President Lincoln during the Civil War, when the president believed that the Union Army was being defrauded by unscrupulous contractors.

The Act was substantially amended by Congress in 1986 and 2009 to enhance the government's ability to recover losses sustained as a result of fraud.  At those times, Congress determined that fraud against the government was pervasive and that the FCA, which Congress described as the primary tool for combating government fraud, was in need of reform.  Congress intended that the amendments create incentives for individuals with knowledge of fraud against the United States to disclose the information without fear of reprisals or government inaction, and to encourage the private bar to commit legal resources to prosecute fraud on the government's behalf.

8.     The FCA prohibits knowingly presenting, or causing to be presented, to the federal government a false or fraudulent claim for payment or approval.   31 U.S.C. §3729(a)(1)(A). Additionally, it prohibits knowingly making or using, or causing to be made or used, a false or fraudulent record or statement (i) material to a false or fraudulent claim or (ii) to conceal, avoid, or decrease an obligation to pay or transmit money or property to the federal government.  31 U.S.C. §§3729(a)(1)(B), (a)(1)(G).  Any person who violates the FCA is liable for a civil penalty of up to $11,000 for each violation, plus three times the loss sustained by the United States.  31 U.S.C. §3729(a); 64 Fed. Reg. 47099, 47103 (1999).  Comparable provisions are contained in the state FCAs.

9.     The FCA defines "knowingly" as having knowledge that the information is false, or acting with a deliberate ignorance of, or reckless disregard of, the truth or falsity of the information.  31 U.S.C. § 3729(b)(1).  Comparable provisions are contained in the state FCAs.

10.     The FCA, as well as the state FCA statutes, allow any person having information about such violations to bring an action on behalf of the government and to share in any recovery obtained.

11.    The FCA and the state FCA acts require that the complaint be filed under seal for a minimum of 60 days, without service on the Defendants during that time, to allow the government time to conduct its own investigation and to determine whether to join the suit.

12.    Based on the foregoing provisions, qui tam Relator, Ashlon Williamson, (hereinafter "Williamson" "Relator," and/or "Plaintiff") seeks to recover all available damages, civil penalties, and other relief for the federal and state violations alleged herein, in every jurisdiction to which the Defendants' misconduct has extended.

13.    All of the Defendants' agents who engaged in the fraudulent conduct are not presently known by Relator, and the precise amount of the loss to the government cannot presently be determined.

14.    Further information on the details and extent of the fraud are contained within Defendants' records.

## II. THE PARTIES: JURISDICTION AND VENUE

15.    Relator, Ashlon Williamson, is and was at all times material hereto a resident of the City of Belleville, County of Wayne, State of Michigan.

16.    Relator was employed by Defendant as a Regional Sales Professional under the direct supervision of Senior Healthcare Sales Executive for Defendant Centria, Curtis Moore, from March 14, 2016 at Defendant's Novi location until his separation from employment on February 7, 2017.

17.    Defendant Centria, on information and belief, has and had, at all times relevant herein, their principle place of business in the City of Novi, located in the State of Michigan.

18.     Defendant, Centria, upon information and belief, is a healthcare provider that does business in the following states: Michigan, Texas, California, Washington, Oregon, and New Mexico.

19.     Defendant Scott Barry is an Officer and/or Director of Defendant Centria, upon information and belief, and conducts business on its behalf in the following states: Michigan, Texas, California, Washington, Oregon, and New Mexico and has knowledge of the operations thereof.

20.     Defendant Alicia Decker is an Officer and/or Director of Defendant Centria, upon information and belief, and conduct business on its behalf in the following states: Michigan, Texas, California, Washington, Oregon, and New Mexico and has knowledge of the operations thereof.

21.     Defendant Amber Gariepy is the Operations Manager, Officer and/or Director of Defendant Centria, upon information and belief, and conducts business on its behalf in the following states: Michigan, Texas, California, Washington, Oregon, and New Mexico and has knowledge of the operations thereof.

22.     Defendants Darren Schwartz, Executive Vice President and Chief of Sales; Vanessa Pawlak, Compliance Manager; and Michelle Carter-Pierce, Compliance Executive and General Counsel; upon information and belief, since approximately January 2017, conduct business on behalf of Centria Healthcare, LLC in the following states: Michigan, Texas, California, Washington, Oregon, and New Mexico and has knowledge of the operations thereof.

23.     Defendant Christopher Wilcox is an Officer and/or Director of Defendant Centria, upon information and belief, and conducts business on its behalf in the following states:

6

Michigan, Texas, California, Washington, Oregon, and New Mexico and has knowledge of the operations thereof.

24.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §3729 and §3730, and for claims under state law.

25.   Under 31 U.S.C. §3730(e) and the comparable provisions of the state statutes listed above, there has been no public disclosure of the allegations or transactions in this Complaint. To the extent there has been any such disclosure, Relator Williamson constitutes an original source pursuant to 31 U.S.C. §3730(e)(4) and the comparable provisions of the state statutes listed above. Prior to any public disclosure, Williamson voluntarily disclosed to the government, and to the states' Attorneys General and DWMHA the information on which the allegations or transactions discussed herein are based; he has knowledge independent of, and that materially adds to, any publicly disclosed allegations or transactions; and this information was provided to the government before this action was filed.

26.     Personal jurisdiction and venue are proper in this district pursuant to 28 U.S.C. 71391(b) and 1395(a), and 31 U.S.C. § 3732(a), as to Defendants and any of its agents transacting business or otherwise engaged in fraudulent conduct within the district.

## COUNT I- FEDERAL FALSE CLAIMS ACT
## 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B) VIOLATION

27.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

28.     Defendant Centria is a healthcare company and the Nation's largest provider of Applied Behavior Analysis (ABA) therapy, behavioral planning and intervention related to Autism Spectrum Disorders.

29.     This is a claim for treble damages and penalties under the Federal False Claims Act, 31 U.S.C. §3729, et seq., as amended.

30.     Through the acts described above, Defendants and its officers have knowingly presented or caused to be presented, false or fraudulent claims to officers, employees or agents of the United States, within the meaning of 31 U.S.C. §3729(a)(1)(A).

31.     Through the acts described above, Defendants and it agents have knowingly made, used, or caused to be made or used, false or fraudulent records and statements, and omitted material facts, to get false and fraudulent claims paid or approved, within the meaning of 31 U.S.C. § 3729(a)(1)(B).

32.     The United States government, unaware of the falsity of the records, statements and claims made caused to be made by Defendants, paid and continues to pay claims that would not be paid but for Defendants' unlawful conduct.

33.     As a result of the Defendants' acts, the United States government has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

34.     Additionally, the United States is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants arising from their unlawful conduct as described herein.

### COUNT II
### FEDERAL FALSE CLAIMS ACT 31 U.S.C. § 3729(a)(1)(G) VIOLATION

35.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

36.     This is a claim for penalties and treble damages under the Federal False Claims Act, 31 U.S.C. §§ 3729, et seq., as amended.

37.     Through the acts described above, Defendants and its agents have knowingly made, used, or caused to be made or used, false records or statements and concealed, avoided, or decreased an obligation to pay or transmit money or property to the federal government, within the meaning of 31 U.S.C. §3729(a)(1)(G).

38.     An overpayment from a government program received by a provider in excess of the amount that is due and payable, including any payment for non-covered items or services that are not reasonable and necessary in accordance with the Medicare rules, must be promptly remitted by the provider.  Even when an overpayment is received through an innocent billing error or through a mistake of the contractor, 42 U.S.C. §1320a -7k(d)(1) provides that "returning the overpayment" is an obligation as defined in 3729(b)(3) of title 31 for purposes of section §3729 of such title."

39.     Defendant is aware that the conduct described herein has resulted in the submission of claims to government programs for payment to which Defendant is not entitled; Defendant and its agents have knowingly and wrongfully retained such overpayments.

40.     On and after May 24, 2010, the effective day of the legislation that established subsection 7k(d)(1) referred to above, each day that Defendants have retained such an overpayment is a separate violation of the FCA.

41.     As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

42.     Additionally, the United States is entitled to the maximum penalty of $11,000 for each and every false record or statement knowingly made, used, or caused to be made or used to conceal, avoid, or decrease an obligation to pay or transmit money or property to the United States.

## COUNT III
## CALIFORNIA FALSE CLAIMS ACT
## GOVERNMENT CODE §§ 12651(A)(1) AND (A)(2) VIOLATION

43.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

44.     This is a claim for treble damages and penalties under the California False Claims Act, Government Code §§ 12650, et seq.

45.     Through the acts described above, Defendants and its agents have knowingly presented or caused to be presented false or fraudulent claims to officers, employees or agents of the State of California, within the meaning of California Government Code § 12651(a)(1).

46.     Through the acts described above, Defendant has knowingly made, used, or caused to be made or used, false or fraudulent records and statements, and omitted material facts, to get false and fraudulent claims paid or approved, within the meaning of California Government Code § 12651(a)(2).

47.     The State of California, unaware of the falsity of the records, statements and claims made or caused to be made by Defendants, paid and continues to pay claims that would not be paid but for Defendants' unlawful conduct.

48.     As a result of Defendants' acts, the State of California has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

49.     Additionally, the State of California is entitled to the maximum penalty of $10,000 for each and every false and fraudulent claim made and caused to be made by Defendants, arising from their unlawful conduct as described herein.

**COUNT IV**
**CALIFORNIA FALSE CLAIMS ACT**
**GOVERNMENT CODE § 12651(A)(7) VIOLATION**

50.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

51.     This is a claim for penalties and treble damages under the California False Claims Act, Government Code §§ 12650, et seq.

52.     Through the acts described above, Defendants and its agents have knowingly made, used, or caused to be made or used, false records or statements and concealed, avoided, or decreased an obligation to pay or transmit money or property to the State of California, within the meaning of California Government Code §12651(a)(7).

53.     As a result of Defendants' acts, the State of California has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

54.     Additionally, the State of California is entitled to the maximum penalty of $10,000 for each and every false record or statement knowingly made, used, or caused to be made or used to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state.

**COUNT V**
**CALIFORNIA FALSE CLAIMS ACT**
**GOVERNMENT CODE § 12651(A)(8) VIOLATION**

55.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

56.     This is a claim for penalties and treble damages under the California False Claims Act, Government Code §§ 12650, et seq.

57.     Through the acts described above, Defendants and its agents have become at least the beneficiaries of the inadvertent submissions of false claims.

58.     Notwithstanding Defendants and its agents' knowledge that they are the beneficiaries of such claims, Defendants and its agents have failed to disclose the claims to the State within a reasonable time after their discovery within the meaning of California Government Code §12651(a)(8).

59.     As a result of Defendants' acts and omissions, the State of California has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

60.     Additionally, the State of California is entitled to the maximum penalty of $10,000 for each and every unreported false record or statement knowingly made, used, or caused to be made or used that caused an inadvertent submission of a false claim.

## COUNT VI
## MICHIGAN MEDICAID FALSE CLAIMS ACT
## MICHIGAN STATUTES § 400.607(1) VIOLATION

61.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

62.     This is a claim for treble damages and penalties under the Michigan Medicaid False Claims Act, Michigan Statutes §400.601, et seq.

63.     Through the acts described above, Defendants and its agents knowingly presented or caused to be presented false or fraudulent claims to officers, employees or agents of the State of Michigan, within the meaning of Michigan Statutes §400.607(1).

64.     As a result of Defendants' acts, the State of Michigan has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

65.     Additionally, the State of Michigan is entitled to the maximum penalty of $50,000, for each and every false and fraudulent claim made and caused to be made by Defendants, arising from their unlawful conduct as described herein.

## COUNT VII
## MICHIGAN FALSE CLAIMS ACT
## MICHIGAN STATUTES § 400.607(3) VIOLATION

66.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

67.     This is a claim for treble damages and penalties under the Michigan False Claims Act, Michigan Statutes §400.601, et seq.

68.     Through the acts described above, Defendants and its agents have knowingly made, used, or caused to be made or used, false records or statements and concealed, avoided, or decreased an obligation to pay or transmit money or property to the State of Michigan, within the meaning of Michigan Statutes §400.607(3).

69.     As a result of Defendants' acts, the State of Michigan has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

70.     Additionally, the State of Michigan is entitled to the maximum penalty of $50,000, for each and every false and fraudulent claim made and caused to be made by Defendants, arising from their unlawful conduct as described herein.

## COUNT VIII
## NEW MEXICO MEDICAID FALSE CLAIMS ACT
## NEW MEXICO STATUTES §§ 27-14-4A AND C VIOLATIONS

71.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

72.     This is a claim for treble damages and penalties under the New Mexico Medicaid False Claims Act, New Mexico Statutes §27-14-1, et seq.

73.     Through the acts described above, Defendants and its agents knowingly presented or caused to be presented false or fraudulent claims to officers, employees or agents of the State of New Mexico, within the meaning of New Mexico Statutes §27-14-4A.

74.     Through the acts described above, Defendants and its agents have knowingly made, used, or caused to be made or used, false or fraudulent records and statements to get false and fraudulent claims paid or approved, within the meaning of New Mexico Statutes §27-14-4C.

75.     The State of New Mexico, unaware of the falsity of the records, statements and claims made or caused to be made by Defendants and its agents, paid and continues to pay claims that would not be paid but for Defendant's unlawful conduct.

76.     As a result of Defendants' acts, the State of New Mexico has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

77.     Additionally, the State of New Mexico is entitled to the maximum penalty of $10,000 for each and every false and fraudulent claim made and caused to be made by Defendant, arising from their unlawful conduct as described herein.

14

**COUNT IX**
**NEW MEXICO MEDICAID FALSE CLAIMS ACT**
**NEW MEXICO STATUTES § 27-14-4E**

78.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

79.     This is a claim for treble damages and penalties under the New Mexico Medicaid False Claims Act, New Mexico Statutes §27-14-1, et seq.

80.     Through the acts described above, Defendants have knowingly made, used, or caused to be made or used, false records or statements and concealed, avoided, or decreased an obligation to pay or transmit money or property to the State of New Mexico, within the meaning of New Mexico Statutes §27-14-4E.

81.     As a result of Defendants' acts, the State of New Mexico has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

82.     Additionally, the State of New Mexico is entitled to the maximum penalty of $10,000 for each and every false and fraudulent claim made and caused to be made by Defendants, arising from their unlawful conduct as described herein.

**COUNT X**
**OREGON FALSE CLAIMS ACT 2015 ORS §180.755 VIOLATION**

83.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

84.     This is a claim for treble damages and penalties under the Oregon False Claims Act, 2015 ORS §180.755, et seq.

85.     Through the acts described above, Defendants have knowingly made, used, or caused to be made or used, false records or statements and concealed, avoided, or decreased an

obligation to pay or transmit money or property to the State of Oregon, within the meaning 2015 ORS §180.755.

86.     As a result of Defendants' acts, the State of Oregon has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

87.     Additionally, the State of Oregon is entitled to the maximum penalty of $10,000 for each and every false and fraudulent claim made and caused to be made by Defendant, arising from their unlawful conduct as described herein.

## COUNT XI
## TEXAS MEDICAID FRAUD PREVENTION ACT
## TEXAS STATUTES §§ 36.002(1) AND (2) VIOLATION

88.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

89.     This is a claim for treble damages and penalties under the Texas Medicaid Fraud Prevention Act, Texas Statutes §§ 36.001, et seq.

90.     Through the acts described above, Defendants and its agents have knowingly presented or caused to be presented false or fraudulent claims to officers, employees or agents of the State of Texas, within the meaning of Texas Statutes §36.002(1).

91.     Through the acts described above, Defendants and its agents have knowingly made, used, or caused to be made or used, false or fraudulent records and statements to get false and fraudulent claims paid or approved, within the meaning of Texas Statutes §36.002(2).

92.     The State of Texas, unaware of the falsity of the records, statements and claims made or caused to be made by Defendants, paid and continues to pay claims that would not be paid but for Defendants' unlawful conduct.

93.     As a result of Defendants' and its agents' acts, the State of Texas has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

94.     Additionally, the State of Texas is entitled to the maximum penalty of $15,000 for each and every false and fraudulent claim made and caused to be made by Defendants, arising from their unlawful conduct as described herein.

**COUNT XII**
**TEXAS MEDICAID FRAUD PREVENTION ACT TEXAS STATUTES § 36.002(12)**

95.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

96.     This is a claim for treble damages and penalties under the Texas Medicaid Fraud Prevention Act, Texas Statutes §§ 36.001, et seq.

97.     Through the acts described above, Defendants have knowingly made, used, or caused to be made or used, false records or statements and concealed, avoided, or decreased an obligation to pay or transmit money or property to the State of Texas, within the meaning of Texas Statutes §36.002(12).

98.     As a result of Defendants' acts, the State of Texas has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

99.     Additionally, the State of Texas is entitled to the maximum penalty of $15,000 for each and every false and fraudulent claim made and caused to be made by Defendants, arising from their unlawful conduct as described herein.

**COUNT XIII**
**WASHINGTON MEDICAID FRAUD FALSE CLAIMS ACT WASHINGTON STATUTES RCW 74.09 §§ 202(1)(A) AND (1)(B)**

100.    Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

101.     This is a claim for treble damages and penalties under the Washington Medicaid Fraud False Claims Act, Washington Statutes RCW 74.09 §§ 101, et seq.

102.     Through the acts described above, Defendants have knowingly presented or caused to be presented false or fraudulent claims to officers, employees or agents of the State of Washington, within the meaning of Washington Statutes RCW 74.09 §202 (1)(a).

103.     Through the acts described above, Defendants have knowingly made, used, or caused to be made or used, false or fraudulent records and statements to get false and fraudulent claims paid or approved, within the meaning of Washington Statutes RCW 74.09 §202(1)(b).

104.     The State of Washington, unaware of the falsity of the records, statements and claims made or caused to be made by Defendants, paid and continues to pay claims that would not be paid but for Defendants' unlawful conduct.

105.     As a result of Defendants' acts, the State of Washington has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

106.     Additionally, the State of Washington is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants, arising from their unlawful conduct as described herein.

### COUNT XIV
### WASHINGTON MEDICAID FRAUD FALSE CLAIMS ACT
### WASHINGTON STATUTES RCW 74.09 § 202(1)(G)

107.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

108.     This is a claim for treble damages and penalties under the Washington Medicaid Fraud False Claims Act, Washington Statutes RCW 74.09 §101, et seq.

109.     Through the acts described above, Defendants have knowingly made, used, or caused to be made or used, false records or statements and concealed, avoided, or decreased an obligation to pay or transmit money or property to the State of Washington, within the meaning of Washington Statutes RCW 74.09 §202(1)(g).

110.     As a result of Defendants' acts, the State of Washington has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

111.     Additionally, the State of Washington is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants, arising from their unlawful conduct as described herein.

## COUNT XV
## RETALIATION

112.     Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

113.     Defendants unlawfully retaliated against Plaintiff employee for engaging in a protected activity in violation of 31 U.S.C. §3730(h); Michigan Medicaid False Claims Act, Federal False Claims Act ("FCA"), 31 U.S.C. §3729 and §3733; Consumer Protection Act; Whistleblower Protection Act §469 of 1980 (WPA), Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, §104 (WPA), Michigan public policy; and in disregard of Mich. Comp. Laws §400.610(c) with unlawful acts of retaliation, including but not limited to termination from his employment with Defendant Centria.

114.     During his employment with Centria Healthcare, LLC., Defendants failed to compensate the Relator for commissions, referral fees, recruiting fees, and fringe benefits earned per the parties Employment Contract.

(Exhibit 2, Offer of Employment dated March 14, 2016; Employment Agreement, Termination Letter Dated February 6, 2017; and draft Severance Agreement (Refused by Relator)).

115.    Relator routinely complained to Defendants that he was owed compensation, commissions, referral fees, recruiting fees and fringe benefits per his Employment Contract; however, Defendants failed to address his concerns.

116.    On or about January 6, 2017, Relator filed a complaint with the Defendant Centria's Senior Sales Director related to unpaid compensation, including but not limited to referral fees, recruiting fees and fringe benefits; Defendant management responded that he would be fully compensated on January 10, 2017 but he was not.

117.    Relator was not fully compensated by Defendants for work performed during his employment; Defendant currently owes relator over $48,300 for referral fees per the parties Employment Contract. (Exhibit 2)

118.    On or about January 12, 2016, Relator complained to Defendant manager, Curtis Moore, that he was still owed money for referrals, despite management promise that he would be paid up to date as of January 10, 2017.

119.    During the January 12, 2017 meeting with Defendant Manager Moore, Relator reported concerns that several Behavior Technicians were assigned to and evaluated the patients he referred and that Defendant was billing Medicare and/or Medicaid for services they performed as if they were conducted by Behavior Analysts; such as licensed, credentialed and certified BCaBAs, QBHPs and/or BCBAs, so that Defendants would receive increased reimbursement from the government. (See Exhibit 1; Appendix B, Fee Schedule)

120.    During the January 12, 2017 meeting with Defendant Manager Moore, Relator reported concerns that the business and billing practices conducted by Defendant were fraudulent, in violation of the Service Provider Contract between Detroit Wayne Mental Health Authority and Centria Healthcare, LLC. and constituted Medicare Fraud in violation of the False Claims Act. Relator informed Defendant Manager Moore that its agents knowingly billed work provided by hundreds of Behavior Technicians at the higher rate used for licensed, credentialed Behavior Analysts, in order to receive higher reimbursements from the government. (Exhibit 1, *See* Appendix B, DWMHA ASD Benefit Fee Schedule Effective 10/1/16)

121.    Defendant Manager Moore informed Relator that he was not aware of this and would relay this complaint to upper management and respond accordingly.

122.    On January 23, 2017, a new Sales Director for Centria Healthcare, Darren Schwartz, contacted Relator in order to schedule a meeting to further follow up on Relator's complaints to management; this meeting was scheduled for January 26, 2017.

123.    On January 24, 2017, Defendant held a Regional Sales Meeting involving all Regional Sales Professionals, including the Relator.

124.    During the January 24, 2017 meeting, Relator and other Regional Sales Professionals inquired into unpaid referral fees and other compensation, inquired about the minimum annual compensation of $120,000 that was promised by Defendant management upon hire; due to all the complaints about compensation and unpaid fees, Defendant's Sales Director, Darren Schwartz stated that the meeting would be concluded and discussed one on one with employees.

125.     Due to Relator's unfamiliarity with Director Schwartz, Relator asked Defendant Manager, Curtis Moore, to attend the meeting with him and Defendant Schwartz set for January 26, 2017. However, on January 26, 2017, thirty minutes before the scheduled time for the meeting, Schwartz called Relator into his office for the meeting; therefore, Manager Moore was unable to attend this meeting.

126.     Defendant's Sales Director, Darren Schwartz stated "they" recently purchased Centria Healthcare, LLC. and may be able to find a management spot for him on the team; Relator reiterated his complaints about not being compensated for referrals, leads, recruiting fees and billing during this meeting.

127.     During this January 26, 2017 meeting, Defendant Manager Schwartz interrogated Relator regarding his manager, Curtis Moore's hiring decisions and Relator's involvement; Relator informed this new Sales Director that neither he nor Manager Curtis made hiring decisions or approvals for Defendant as these were done through Human Resources; Relator was merely assigned to accept resumes and aid in training any staff after approval by Human Resources; Manager Schwartz abruptly ended the meeting without addressing or discussing Relator's previous complaints.

128.     Defendant management failed to respond, address or investigate any of Relator's complaints, including those related to Medicare and/or Medicaid Fraud, fraudulent billing practices, failure to compensate him for work as set forth in the Offer of Employment. (See Exhibit 2)

129.   On January 27, 2017, after no follow up or investigation by Defendant management into his complaints, Relator left a voicemail for the Compliance Officer at the Detroit Wayne Mental Health Authority (DWMHA) in regards to his concerns of Medicare Fraud, Fraudulent Billing Practices, having unlicensed, non-credentialed Behavior Technicians bill for services as Billing Analysts, having Behavior Technicians evaluate and treat his referred patients while misrepresenting themselves as licensed Behavior Analysts and/or other professionals on behalf of Defendant Centria Healthcare, LLC.

130.   On January 30, 2017, Relator followed up on his voicemail by calling the Compliance Officer for DWMHA, Muddasar Tawakkul, in regards to his concerns of Medicare Fraud, Fraudulent Billing Practices, having unlicensed, non-credentialed Behavior Technicians bill for services as Billing Analysts, having Behavior Technicians evaluate and treat his referred patients while misrepresenting themselves as licensed Behavior Analysts and/or other professionals on behalf of Defendant Centria Healthcare, LLC.

131.   On January 30, 2017, Relator filed a formal complaint against Defendant with the DWMHA based on the aforementioned concerns; Relator provided his name, address, contact number and provided information and documentation he had regarding the billing and other practices of Defendant Centria.

132.   Relator was informed that he would be identified as the "Whistleblower" and complainant against Defendant; Relator understood and reported his concern that he may be terminated from his employment due to his complaints based on the temperature of the last management meeting; the DWMHA Compliance Officer stated that he was protected from retaliation based on their contract and should seek legal counsel if he endures any such retaliation. (Exhibit 1)

133.   DWMHA Compliance Officer, Muddasar Tawakkul, notified Relator that he forwarded the complaint to the office of the Michigan Attorney General; per the parties' contract, the DWMHA Compliance Officer has the responsibility and authority to make fraud referrals to the Office of the Michigan Attorney General, Health Care Fraud Division, Office of Inspector General (OIG). (Exhibit 1, See p.18)

134.   Defendant Manager Moore was aware of Relator's concerns as well as Defendant's higher level management's lack of response to his complaints; Manager Moore was concerned about these allegations and silently attended the conference call during Relator's complaint to the DWMHA.

135.   Days later, Defendant management falsely accused Relator of offering employment positions for referrals or other inducements; Manager Moore voiced his opposition to these accusations stating that "Ashlon did not have hiring and or negotiating power. These roles [were] passed down from upper management to me." (Exhibit 3, Manager Moore Email Dated February 17, 2017) Defendant upper management's behavior constituted retaliation against Relator due to his complaints against Defendant to the DWMHA.

136.   On February 6, 2017, Defendant management terminated Relators employment for alleged "unprofessionalism," a pretext for retaliation against him for his complaints to management, and the DWMHA and Michigan Attorney General.

137.   Due to Relator's complaints of Medicare/Medicaid Fraud and fraudulent billing practices to Defendants, the DWMHA, and Michigan Attorney General, Defendant management retaliated against the Relator by refusing to fully compensate him, withholding bonus, referral and recruiting fees, and terminated Relator's employment with Defendant Centria on February 6, 2017. (See Exhibit 2, Letter of Termination and draft Severance Agreement)

138.   After wrongfully terminating Relator from his employment, Defendants attempted to coverup their wrongful and fraudulent actions by inducing Relator to sign a Severance Agreement containing overbroad language and waiving any right Relator would lawfully have to pursue claims under the False Claim Act and Whistleblower Protection Act, in exchange for a nominal sum equivalent to two weeks of Relator's salary. (See Exhibit 2, Severance Agreement-Refused by Relator)

139.   Defendant Manager Moore provided a letter of recommendation to Relator which states that he "has conducted himself with the upmost professionalism, situational leadership and has been a tremendous asset to my team" evidencing the lack of merit and/or support for Relator's termination. (Exhibit 4, Manager Moore, Letter of Recommendation for Relator Williamson dated February 14, 2017)

140.   Since January 2017, several of Defendants' employees have been terminated from their employment due to their refusal to follow management directives to lie, falsify and/or conceal wrongful and/or fraudulent Medicare and/or Medicaid billings to the government and/or compliance related issues.

141.   On February 7, 2017, Relator reported Defendants' retaliatory acts, including but not limited to his termination of employment, to the DWMHA (Exhibit 5, BCBA Registry Information Provided to DWMHA by Relator on February 7, 2017; Exhibit 6, Centria Termination Information Provided to DWMHA by Relator on February 7, 2017)

142.   Since January 2017, Defendant has retaliated against several Defendants' employees who management suspected participated in reports to governmental agencies related to Defendants' wrongful billing and/or deceptive business practices to management by

terminating their employment. (Exhibit 7, Employee Complaint of Wrongful Termination Following Complaint to Management of Defendants' Improper and Fraudulent Billing Practices)

143.   Defendant employees filed complaints against Defendants to management and/or governmental agencies regarding suspicion that Defendant agents have a pattern and practice of billing insurance companies for caretaker services under the LPN designation; in order to assess a higher hilling rate, despite lacking the required credentials and/or licensing. (Exhibit 7, Employee Complaint of Wrongful Termination Following Complaint to Management of Defendants' Improper and Fraudulent Billing Practices)

144.   Defendant by and through its management, has a pattern and practice of retaliating against employees who file complaints to governmental agencies and/or engage in a protected activity in violation of 31 U.S.C. §3730(h); Michigan Medicaid False Claims Act, Federal False Claims Act ("FCA"), 31 U.S.C. §3729 and §3733; Consumer Protection Act; Whistleblower Protection Act §469 of 1980 (WPA), Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, §104 (WPA), Michigan public policy.

145.   As a direct, proximate, natural and foreseeable consequence of the foregoing, Relator and Plaintiffs have suffered damages for which they are entitled to recover.

## COUNT XVI
## BREACH OF CONTRACT-
## UNPAID COMMISSIONS, REFERRALS, COMPENSATION AND FRINGE BENEFITS

146.   Relator repeats and realleges each and every allegation contained in the preceding paragraphs, as though fully set forth herein.

147.   Relator and Defendant entered into an employment agreement whereby Defendant offered to pay Relator commissions for making patient referrals, recruiting new employees, and fringe benefits in the form of paid vacation, sick leave and personal time as these

items accrued; in exchange for Relator working for Defendant as a Regional Sales Professional; the terms of which are set forth in the parties' Offer of Employment and Employment Agreement. (See Exhibit 2)

148.    As of the final date of his employment with Defendant, Relator had submitted over 138 referrals for which he was not compensated; at minimum, these referrals reflect compensation of $48,300 which is owed to Relator.

149.    Despite several demands for payment for these referrals by Relator, Defendants failed to compensate Relator to date.

150.    Defendant breached its agreement with Relator by failing to pay him for all referrals he submitted during his employment. (Exhibit 2)

151.    Defendant breached its agreement with Relator by failing to compensate him for recruitment of six valuable employees, despite agreement to the contrary.

152.    As of the final date of his employment with Defendant, Relator had accrued benefits for vacation, sick and personal time off for which he was not compensated.

153.    Despite several demands for payment by Relator, Defendants to date refuses to compensate him for these accrued fringe benefits.

154.    Defendant breached its agreement with Relator by failing to pay him for all accrued fringe benefits at the completion of his employment. (See Exhibit 2)

155.    The restrictive covenant and/or non-compete clause as set forth in the Parties' Employment Agreement and Offer of Employment is unduly restrictive, overbroad and unenforceable.

156.    As a direct, proximate, natural and foreseeable consequence of the foregoing, Relator and government, Plaintiffs, have suffered damages for which they are entitled to recover.

WHEREFORE, Relator and Plaintiffs pray for judgment against the Defendants as follows: That Defendants cease and desist from violating the False Claims Act, 31 U.S.C.§3729 et seq. and the State False Claims Acts, under similar provisions of the State False Claims Acts; that this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States and the States have sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of 31 U.S.C. §3729, plus civil penalties of the maximum amounts allowed by statute for each state; that Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. §3730(d) and similar provisions of the State False Claims Acts; that Relator be awarded all compensation, fringe benefits and bonuses earned during his employment; that Relator be awarded all costs of this action, including attorneys' fees, costs and expenses; that the restrictive covenant and/or non-compete clauses in the Parties' Offer of Employment be deemed unenforceable; and that Relator recovers such other and further relief as the Court deems just and proper for its breach of contract and wrongful retaliation against Defendants.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Respectfully submitted,

/s/Danielle Safran
_____
DANIELLE B. SAFRAN (P61965)
THE SIGLER LAW FIRM, PLC
Attorney for Qui Tam Relator
30300 Northwestern Hwy. Suite 337
Farmington Hills, Michigan 48334
Telephone: (248) 932-3500 x237
Dated: April 26, 2017                    Safranlaw1@gmail.com

28